

## Office of the Attorney General
### Washington, D. C. 20530

February 5, 2025

MEMORANDUM FOR ALL DEPARTMENT EMPLOYEES

FROM:           THE ATTORNEY GENERAL

SUBJECT:        TOTAL ELIMINATION OF CARTELS AND TRANSNATIONAL CRIMINAL ORGANIZATIONS[1]

On January 20, 2025, President Trump directed the federal government to revise existing national security and counter-narcotics strategies to pursue *total elimination* of Cartels and Transnational Criminal Organizations (TCOs). This policy requires a fundamental change in mindset and approach. We must do more than try to mitigate the enormous harms these groups cause in America. It is not enough to stem the tide of deadly poisons, such as fentanyl, that these groups distribute in our homeland. Rather, we must harness the resources of the Department of Justice and empower federal prosecutors throughout the country to work urgently with the Department of Homeland Security and other parts of the government toward the goal of eliminating these threats to U.S. sovereignty. This memorandum sets forth directives and initiatives to promptly commence those efforts.

### I.    Charging Priorities

Achieving total elimination of Cartels and TCOs will require additional resources and thoughtful charging decisions by federal prosecutors based on coordination with law enforcement partners.

For leaders and managers of Cartels and TCOs, the most serious, readily provable offenses under the Department's general charging policy will typically include capital crimes, terrorism charges, racketeering charges, Continuing Criminal Enterprise offenses under 21 U.S.C. § 848, violations of the Foreign Narcotics Kingpin Designation Act under 21 U.S.C. § 1906, violations of the International Emergency Economic Powers Act under 50 U.S.C. § 1705 (IEEPA), and machinegun charges under 18 U.S.C. §§ 924(c)(1)(B)(ii) and 924(o).

---

[1] This guidance is not intended to, does not, and may not be relied upon to create, any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

DEFENDANT'S EXHIBIT

A

tabbies

On the other hand, under the total-elimination policy, it will often be prudent to pursue removal from the United States of a low-level investigative target without immigration status, rather than incurring the time and resource costs associated with criminal prosecution.  Similarly, because the Department is working toward elimination of these threats from the homeland, it will rarely be consistent with this policy to pursue foreign arrests and extraditions of targets who may be eligible for safety-valve relief or minor role adjustments.  This includes foreign arrests of low-level narcotics offenders pursuant to the Maritime Drug Law Enforcement Act under Chapter 705 of Title 46.  Resources currently devoted to such arrests, including at the Maritime Unit of the Narcotics and Dangerous Drug Section, shall be redirected toward investigations involving inspections, interdictions, seizures, and forfeitures of commercial shipping vessels transporting narcotics, precursor chemicals, petroleum products, and/or human trafficking and smuggling victims.  These activities support the operations of Cartels and TCOs, often in violation of U.S. sanctions.

More generally, while charging decisions must be based on case-specific assessments of the facts and evidence, the following factors should be evaluated when considering whether to pursue charges, arrests, and/or extraditions of a Cartel or TCO target:

- Whether the target is a manager or a leader of the organization;

- Whether the target has significant ties to the United States, including physical presence or directing action in the United States;

- Whether the target's conduct resulted in death of or injuries to U.S. citizens;

- Whether the target's conduct involved international terrorism under 18 U.S.C. § 2331(1)(A)-(B);

- The availability of non-criminal responses to the target's conduct, including removal from the United States and economic sanctions; and

- Any known or suspected prior violent crimes committed by the target.

### II.    Removing Bureaucratic Impediments to Aggressive Prosecutions

In most cases, U.S. Attorneys' Offices, partnering with federal, state, and local law enforcement, will lead the charge against Cartels and TCOs.  Those teams must have full and immediate access to the most serious and broad charges that Congress has made available for the types of conduct at issue.  For example, some terrorism charges and violations of IEEPA targeting Specially Designated Global Terrorists (SDGTs) allow prosecutors to proceed against members and associates of Cartels and TCOs in the absence of a specific nexus to drug trafficking or importation of contraband to the United States.  Therefore, the changes set forth below will be

implemented for a period of 90 days[2] and renewed or made permanent thereafter as deemed appropriate by the Office of the Attorney General and the Office of the Deputy Attorney General:

Capital Crimes. Mandatory pre-indictment review for capital-eligible offenses pursuant to Justice Manual § 9-10.060 is suspended for cases involving defendants alleged to be members or associates of Cartels or TCOs. Such cases present "extenuating circumstances" within the meaning of that provision because they "address public safety concerns."

The U.S. Attorney or Assistant Attorney General authorizing the filing of such charges should comply with all other aspects of Justice Manual § 9-10.060, including by providing a pre-indictment notice to the Capital Case Section and submitting the case for review prior to filing a notice of intent to seek the death penalty.

Terrorism And IEEPA. The approval requirements administered by the National Security Division (NSD) are suspended for the filing of most terrorism charges[3] and IEEPA charges, seeking search warrants relating to such charges, and applying for material witness warrants in connection with investigations targeting members or associates of any Cartel or TCO designated as a Foreign Terrorist Organization or SDGT pursuant to the President's January 20, 2025 Executive Order entitled, "Designating Cartels And Other Organizations As Foreign Terrorist Organizations And Specially Designated Global Terrorists."

While approval requirements are suspended for these types of cases, consultation with NSD and the Office of International Affairs continues to be encouraged to facilitate coordination and uniform treatment of any diplomatic sensitivities. U.S. Attorneys' Offices shall provide NSD with 24 hours' advance notice of the intention to seek charges or apply for warrants, and they shall make available to NSD upon request any existing memoranda relating to the contemplated actions. No new or additional paperwork will be required by NSD in connection with these notices and consultation. However, NSD's concurrence is still required prior to making plea offers, sentencing recommendations, and motions under the Classified Information Procedures Act.

This policy does not expand (or contract) policies relating to investigations and cases involving classified information. Any prudential search requests or use authorizations deemed necessary under existing policy should be coordinated with NSD and completed prior to the filing of charges.

Racketeering. Approval requirements administered by the Violent Crime and Racketeering Section of the Criminal Division (VCRS), as described in Sections 9-110.000, *et seq.*, of the Justice

---

[2] The National Security Division and the Criminal Division are directed to notify the Office of the Deputy Attorney General regarding any modifications believed to be necessary to the Justice Manual and existing regulations to effectuate this policy.

[3] This policy exempts from NSD's approval and concurrence requirements cases involving 18 U.S.C. §§ 2332a, 2332b, 2339, 2339A, 2339B, 2339C, 2339D, 21 U.S.C. § 960A, and 50 U.S.C. § 1705. This policy does not exempt from NSD's approval and concurrence requirements cases involving 18 U.S.C. §§ 175, 175b, 219, 793, 794, 831, 951, and 1030(a)(1).

Manual, are suspended for filing racketeering charges and violent crimes in aid of racketeering targeting all Cartels and TCOs.

Consultation with VCRS and the Office of International Affairs is encouraged to facilitate coordination and uniform treatment of any diplomatic sensitivities. U.S. Attorneys' Offices shall provide VCRS with 24 hours' advance notice of the intention to seek charges and make available to VCRS upon request any existing memoranda relating to the contemplated charges. No new or additional paperwork will be required by VCRS in connection with these notices and consultations.

Within one week of the issuance of this memorandum, NSD and VCRS shall jointly propose standardized language to be used by federal prosecutors across the country to describe Tren de Aragua (TdA), La Mara Salvatrucha (MS-13), the Sinaloa Cartel, and the Jalisco New Generation Cartel in charging instruments and search warrants.

Foreign Corrupt Practices Act. The Criminal Division's Foreign Corrupt Practices Act Unit shall prioritize investigations related to foreign bribery that facilitates the criminal operations of Cartels and TCOs, and shift focus away from investigations and cases that do not involve such a connection. Examples of such cases include bribery of foreign officials to facilitate human smuggling and the trafficking of narcotics and firearms.

The requirements in Justice Manual § 9-47.110 requiring authorization by the Criminal Division for an investigation or prosecution of a case under the Foreign Corrupt Practices Act and Foreign Extortion Prevention Act, as well as the requirement that such investigations and prosecutions be conducted by trial attorneys of the Fraud Section, are suspended for all matters relating to foreign bribery associated with Cartels and TCOs. U.S. Attorney's Offices shall provide the Foreign Corrupt Practices Act Unit with 24 hours' advance notice of the intention to seek charges and make available to the Unit upon request any existing memoranda relating to the contemplated charges. No new or additional paperwork will be required by the Foreign Corrupt Practices Act Unit in connection with these notices and consultations.

Money Laundering and Asset Forfeiture. The Criminal Division's Money Laundering and Asset Recovery Section shall prioritize investigations, prosecutions, and asset forfeiture actions that target activities of Cartels and TCOs.

Task Force KleptoCapture, the Department's Kleptocracy Team, and the Kleptocracy Asset Recovery Initiative, shall be disbanded. Attorneys assigned to those initiatives shall return to their prior posts, and resources currently devoted to those efforts shall be committed to the total elimination of Cartels and TCOs.

### III.    Joint Task Forces Vulcan and Alpha

Joint Task Force (JTF) Vulcan, an initiative launched in 2019 to destroy MS-13, and JTF Alpha, which was created in partnership with the Department of Homeland Security to enhance enforcement efforts against human smuggling and trafficking groups, will also be empowered to increase their contributions to this fight. JTF Vulcan's mission is expanded to target TdA, in

Memorandum for all Department Employees                                                      Page 5
Subject: Total Elimination of Cartels and Transnational Criminal Organizations

addition to MS-13. JTF Alpha will continue to target human trafficking and smuggling networks, with a focus on trafficking and smuggling by Cartels and TCOs.

Both JTFs will be elevated to the Office of the Attorney General and jointly supervised by the Office of the Deputy Attorney General. The Directors of JTFs Vulcan and Alpha will be situated in the Office of the Attorney General. Both JTFs will be supported by NSD and the Criminal Division, and their staffs will include additional AUSAs from around the country. The JTFs will engage and utilize each of the Department's law enforcement components, including Federal Bureau of Investigations, Drug Enforcement Administration, Bureau of Alcohol Tobacco, Firearms and Explosives, and United States Marshals Service, and coordinate within existing legal frameworks with DHS's Homeland Security Investigations, Immigration and Customs Enforcement, and Customs and Border Patrol.

## IV.    Pursuing Legislative Changes to Improve Counter-Narcotics Efforts

While there are powerful tools available to combat Cartels and TCOs, greater authorities are needed to target these groups' manufacturing and distribution of fentanyl and other deadly drugs. Therefore, the Drug Enforcement Agency, the Office of Legal Policy and the Office of Legislative Affairs are directed to evaluate and, if deemed appropriate, advocate for the following legislative reforms:

- Permanently placing fentanyl-related substances on Schedule I of the Controlled Substances Act;

- Adding xylazine, which has no legitimate human use and makes fentanyl even more lethal, to Schedule III of the Controlled Substances Act;

- Broadening 21 U.S.C. § 843 to cover manufacturing and other conduct relating to fentanyl and fentanyl-related substances;

- Broadening 21 U.S.C. § 333 to cover devices and materials used to make counterfeit pills, such as imprinting drugs and drug containers; and

- Requiring serialization of pill-press machines and the machines' critical parts to facilitate tracking and investigation by law enforcement.